IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PARALYZED VETERANS OF AMERICA,<br>801 18th Street, N.W.<br>Washington, D.C. 20006,<br><br>and<br><br>LARRY J. DODSON,<br>C/O Paralyzed Veterans of America<br>801 18th Street, N.W.<br>Washington, D.C. 20006,<br><br>*Plaintiffs*,<br><br>vs.<br><br>U.S. DEPARTMENT OF TRANSPORTATION,<br>1200 New Jersey Ave. SE<br>Washington, D.C. 20590,<br><br>and<br><br>ELAINE L. CHAO, in her official capacity as<br>SECRETARY OF TRANSPORTATION,<br>1200 New Jersey Ave. SE<br>Washington, D.C. 20590,<br><br>*Defendants*. | Case No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Paralyzed Veterans of America ("PVA") and Larry J. Dodson (collectively, "Plaintiffs") sue Defendants Elaine Chao, in her official capacity as Secretary of Transportation, and the U.S. Department of Transportation (collectively, "DOT"); and allege as follows.

**Preliminary Statement**

1.  This case challenges DOT's violation of the Administrative Procedure Act ("APA") in issuing a final rule to delay the compliance date for domestic airlines to track and

1

report on incidents of mishandled wheelchairs and scooters checked onto flights by passengers with disabilities. DOT issued this rule without notice and comment, and its stated justification shows that the rule is arbitrary and capricious.

2.      In October 2016, following a five-year rulemaking process that included public input by travelers, consumer and disability advocacy groups, airlines, and airport authorities, DOT issued a final rule requiring airlines to collect and report data on mishandled wheelchairs and scooters (hereinafter referred to as the "Wheelchair Rule").[1] DOT explained that the rule would fill a vital data gap for disabled passengers, thereby allowing them to make more informed travel decisions. The rule was hailed by travelers, non-profit advocacy groups, and industry associations. The Wheelchair Rule was published in the Federal Register on November 2, 2016, became effective on December 2, 2016, and set a compliance date of January 1, 2018, which DOT determined, based on industry input, provided adequate time for airlines to update their reporting systems. *See* 14 C.F.R. § 234.6.

3.      On March 21, 2017, DOT, without any prior public comment, published a new final rule extending the compliance date to January 1, 2019 (hereinafter referred to as the "Delay Rule").[2] The sole stated rationale for this delay was two letters and an email received from airline companies citing a purported regulatory freeze by the Administration and unspecified "challenges" meeting the 2018 compliance date. The airlines in their correspondence did not specify any specific challenges encountered. DOT did not seek any public comment, and the new final rule is bereft of any explanation for how DOT determined that a delay in the compliance

---

[1] Reporting of Data for Mishandled Baggage and Wheelchairs and Scooters Transported in Aircraft Cargo Components, 81 Fed. Reg. 76300 (Nov. 2, 2016).
[2] Reporting of Data for Mishandled Baggage and Wheelchairs and Scooters Transported in Aircraft Cargo Compartments; Extension of Compliance Date, 82 Fed. Reg. 14437 (Mar. 21, 2017).

2

date was warranted or whether and how it assessed the delay's impact on air travelers with disabilities.

4.      In fact, delaying the Wheelchair Rule will harm Plaintiffs, the thousands of paralyzed veterans who constitute PVA's membership, and countless other Americans with mobility impairments. As DOT correctly recognized in issuing the Wheelchair Rule, mishandling of wheelchairs and scooters is a significant impediment to air travel for individuals who rely on such devices, with the "prospect of loss, damage or delay of such devices" leading to a "widespread reluctance" to travel by air. 81 Fed. Reg. at 76303-04. The Wheelchair Rule would ensure that travelers would know which airlines are more likely to mishandle their assistive devices and incentivize airlines to handle devices properly, providing a substantial benefit to paralyzed individuals that the Delay Rule delays without justification.

5.      In issuing the Delay Rule, DOT violated the APA by improperly disregarding statutorily mandated rulemaking procedures, and acting arbitrarily, capriciously, and contrary to law.

## Parties

6.      Paralyzed Veterans of America ("PVA") is a congressionally chartered veterans service organization founded in 1946 and based in Washington, DC. A core tenet of PVA's mission is to be the leading advocate for, *inter alia*, civil rights and opportunities which maximize the independence of veterans of the armed forces who have experienced spinal cord injury or dysfunction. PVA currently has approximately 20,000 members nationwide.

7.      Because of their physical disabilities, many of PVA's members require wheelchairs or scooters for mobility. Although airlines must generally allow a person with a disability to stow a manual wheelchair in the passenger cabin's storage area (if the aircraft

contains such an area) or strap it to a passenger seat, many manual wheelchairs are stowed in the cargo compartment. Power wheelchairs are also stowed in the cargo compartment. Thus, PVA's members must leave the safety of their wheelchairs or scooters and give them to airlines for transport. Many of PVA's members have had their wheelchairs or scooters damaged, lost, or otherwise mishandled during travel.

8. PVA advises members whose wheelchairs or scooters have been mishandled in submitting DOT and airline complaints and otherwise in dealing with incidents of mishandling. PVA also works with DOT and airlines to identify problem areas and train airline personnel and their contractors in serving people with disabilities.

9. Larry J. Dodson is a resident of North Augusta, South Carolina, who has high-level quadriplegia and requires a power wheelchair for mobility. His wheelchair has been mishandled by air carriers on numerous occasions, resulting in damage to the chair and delay, pain, and humiliation for Mr. Dodson. After his most recent flight, for example, the airline misplaced his wheelchair for approximately an hour, leaving him in an unsuitable chair where he could not do the pressure releases he needs to do to avoid pain and pressure sores. As a result, he was left with lower-body discomfort and sores that took three days of bed rest to heal.

10. Because of the difficulties air travel poses for him, Mr. Dodson frequently takes lengthier ground transportation instead of flying. If he had information about which airlines have the best track record of transporting wheelchairs—that is, the information that the Wheelchair Rule requires airlines to report—he would be able to choose those airlines and reduce the risk of damage or loss, making it significantly easier for him to fly.

11. Defendant Department of Transportation is a federal agency of the United States within the meaning of the APA, 5 U.S.C. § 551(1). It is headquartered at 1200 New Jersey Ave. SE, Washington, DC 20590.

12. Defendant Elaine Chao, in her official capacity as Secretary of Transportation, has her primary office at 1200 New Jersey Ave. SE, Washington, DC 20590.

## Jurisdiction and Venue

13. This Court has authority to review final agency action pursuant to the APA, 5 U.S.C. §§ 701-706, and it has jurisdiction over this action seeking such review pursuant to 28 U.S.C. § 1331.

14. Venue is proper in this District under 28 U.S.C. § 1391(e), as DOT's headquarters are located in Washington, D.C. and a substantial part of the events or omissions giving rise to plaintiff's claims occurred here.

## Facts

### DOT's Proposed Rule on Behalf of Airline Passengers with Disabilities

15. Pursuant to 49 U.S.C. §§ 329, 41708, and 41709, the Secretary of Transportation has the authority to require air carriers to collect and report information related to transportation that the Secretary decides will contribute to the improvement of the transportation system.

16. In accordance with this legislative authority, the Secretary of Transportation has adopted regulations for the collection and reporting of data regarding mishandled wheelchairs and scooters that are entrusted to domestic airlines by disabled passengers and transported in aircraft cargo compartments. 14 C.F.R. § 234.6.

17.     On July 15, 2011, the DOT published a notice of rulemaking in the Federal Register proposing, *inter alia*, to amend the regulations related to data reporting requirements for mishandled wheelchairs and scooters (hereinafter referred to as the "Proposed Rule").[3]

18.     Under the Proposed Rule, domestic air carriers would be required to report the total number of wheelchairs and scooters transported in aircraft cargo compartments and the total number of mishandled wheelchairs and scooters.

19.     DOT proposed this rule to improve access to air travel for individuals with mobility disabilities. In its Notice of Proposed Rulemaking ("NPRM"), DOT explained that it

> is . . . interested in capturing data about the number of the mishandled wheelchairs/scooters per unit of wheelchairs/scooters transported in aircraft cargo. Many air travelers who use wheelchairs are reluctant to travel by air because of concern that the return of their wheelchairs or scooters will be delayed, or the wheelchair/scooter will be damaged or lost. However, we do not know the magnitude of the problem. The proposed data collection for mishandled wheelchairs/scooters is crucial to understanding the magnitude of the problem as this data is not available to us through other means.

76 Fed. Reg. at 41728.

20.     The NPRM further stressed, "It is very important that passengers with mobility disabilities arrive at their destination with their wheelchair/scooter in good working order. Without these devices, they will have great difficulty in exiting the airport or may be confined to their hotel or place of visit." *Id.*

### Public Comment on the Proposed Rule

21.     DOT's proposed rule generated 278 public comments from members of the airline industry; industry associations; consumer rights, disability, and veterans service organizations; and individuals with disabilities.

---

[3] Reporting Ancillary Airline Passenger Revenues, 76 Fed. Reg. 41726 (July 15, 2011).

6

22. DOT received comments from individuals with disabilities sharing personal stories about their experiences travelling with wheelchairs and scooters. For example, one commenter explained:

> I have cerebral palsy and am severely limited in my ability to move. My motorized wheelchair was damaged [in the amount of] approximately $2000 in June when it was mishandled by Delta Airlines staff (loading the chair on the flight to Washington DC). During my August 2011 trip, I was personally injured when United Airlines staff mishandle[d] me when they were loading me onto the plane (flight to Washington DC). Also, on the flight back to Oklahoma City my chair was completely disassembled by United Airlines staff and has resulted in approximately $1500 in damage to the chair.

Comment of Jason Price, Docket No. RITA-2-11-0001 (DOT).

23. Another commenter described repeated damage to and loss of his wheelchair:

> I have been a traveler with a disability for the past 23 years, thanks to a spinal cord injury I received in January of 1988. The severity of my disability requires me to use a power wheelchair for mobility, and during that period I have traveled on over 150 flights throughout the country. During that time I have also experienced instances of damage to my equipment, injury to myself, loss of vital wheelchair parts, or extensive delays when disembarking from the airplane in about a third of those trips. . . . On two occasions, my wheelchair[] was left at the departing airport when I return[ed] to Sacramento from Washington, DC and Honolulu, Hawaii. Despite written instructions not to carry the chair, I watched airline employees attempt to carry it up the stairs to a jetway and in the process have the batteries and extensive wiring harness ripped from the chair as the pieces bounced back down the stairway. That left me without my wheelchair for three days while I was attending a meeting, and also cost [the] airline over $5,000 to repair.

Comment of Michael Clifton Collins, Docket No. RITA-2-11-0001 (DOT).

24. Another commenter, recounting his experiences, praised the proposal: "This is a great and needed proposal! Over the last 15 years of flying I have had my power wheelchair damaged (to[o] many times to count), disassembled and left on the Tarmac for me to put back together, blown up when batteries were not handled correctly and lost!" Comment of Dennis Frederick Lang, Docket No. RITA-2-11-0001 (DOT).

25. DOT also received comments from veterans with disabilities sharing personal stories about mishandled mobility devices. As one veteran explained, "[n]umerous veterans have

7

complained about their mobility devices being damaged or not coming back at all." Comment of Ronald D. Brimmer, U.S. Marine Disabled Veteran, Docket No. RITA-2-11-0001 (DOT).

26.    And Plaintiff PVA wrote strongly in support of the proposed rule:

> PVA strongly supports the proposed requirement that airlines document incidents of mishandled mobility devices.
>
> . . . .
>
> PVA regularly hears from its members regarding their air travel experiences with mishandled, damaged and even lost wheelchairs. Based on this abundant anecdotal evidence, we strongly agree with the Department's assertion that "[m]any air travelers who use wheelchairs are reluctant to travel by air because of concerns that the return of their wheelchairs or scooters will be delayed, or the wheelchair/scooter will be damaged or lost." Regrettably, there is no current way to gather information on the full magnitude of the problem of mishandled wheelchairs/scooters. Current required reporting of problems with wheelchairs is so general that lost or broken wheelchairs are lumped in with complaints of missing requests for wheelchair transfer within a terminal. Mishandling of personal wheelchairs (indeed all personal mobility devices) is egregious enough to merit separate reporting and investigation. Without a robust data collection requirement, complaints of mishandled mobility devices remain single events and may never accrue to the level of pattern or practice, the Department's primary basis for investigating complaints. Also, adequate data will provide the basis for administrative oversight of air carriers' training obligations under the ACAA.

Comment of Paralyzed Veterans of America, Docket No. RITA-2-11-0001 (DOT).

27.    DOT received comments from airports supporting the proposed rule. For example, Airports Council International-North America ("ACI-NA"), the principal association for domestic airports, whose members emplane 95% of all domestic airline passenger traffic, commented that "[a]irports have always supported improving accessibility for passengers with disabilities as it has the added benefit of making the air transportation system even more accessible for all airport users. As a result, ACI-NA supports the Department's proposal to require more information about how well airlines meet the needs of passengers with mobility

disabilities in order to understand accessibility problems." Comment of Airports Council International-North America, Docket No. RITA-2-11-0001 (DOT).

28. One airline industry organization, Airlines for America ("A4A"), submitted a comment, which claimed "that the Department had no basis for concluding that passengers with disabilities are reluctant to travel by air due to wheelchair mishandling, and that the proposal lacked a public policy justification." 81 Fed. Reg. at 76303. US Airways, however, individually commented that it did not object to the rule. *Id.* at 76303-04.

### DOT Holds a Public Hearing on the Proposed Rule

29. On April 27, 2012, DOT published a notice of public meeting on the Proposed Rule in the Federal Register. 77 Fed. Reg. 25105. The meeting was held at DOT's headquarters on May 17, 2012.

30. The meeting was run by DOT representatives from the Office of the Secretary and Office of Economic & Strategic Analysis, the Research and Innovative Technology Administration and Office of the Chief Counsel, and the Office of the General Counsel. The Reporting of Ancillary Airline Passenger Revenues, Public Meeting Attendance List, RITA-2011-0001 (DOT).

31. Attendees included representatives from A4A, Alaska Airlines, American Airlines, ACI-NA, American Society of Travel Agents, Consumer Travel Alliance, Delta Air Lines, Financial Industry Regulatory Authority, Interactive Travel Services Association, JetBlue Airways, Regional Airline Association, Sabre, Sackler Policy Services, LLP, Southwest Airlines, Spirit Airlines, United Airlines, and US Airways. *Id.*

32.     During this meeting, DOT heard extensively about each airline's system for collecting data on mishandled wheelchairs and scooters. DOT also heard extensively about the anticipated costs of complying with the requirements of the proposed rule.

33.     Airlines were asked to estimate how long they would need to come into full compliance with the requirements of the proposed rule. Delta Air Lines estimated that it would take 12 to 18 months, and that the compliance date should begin on the first of a year. The Reporting of Ancillary Airline Passenger Revenues, Transcript of Public Meeting, RITA 2011-0001, 78:21-22–79:1-5 (May 17, 2012). American Airlines agreed with that estimation. *Id.* at 79:22–80:1-2.

34.     US Airways (77:11-12), Delta Air Lines (78:16-17), American Airlines (80:3-4), and United Airlines (80:6-8) each stated that having extra time to implement the requirements of the proposed rule would not reduce the overall cost of compliance.

### DOT Issues the Wheelchair Rule

35.     On November 2, 2016, DOT published the Wheelchair Rule. The rule took effect on December 2, 2016. *See* 81 Fed. Reg. at 76300.

36.     DOT adopted the changes to wheelchair and scooter data collection proposed in the original 2011 proposed rule and discussed in the 2012 Public Meeting.

37.     DOT explained that the Wheelchair Rule would "fill[] a data gap" and "provide passengers with disabilities with a metric that they may use to compare air carriers and to make informed travel decisions." 81 Fed. Reg. at 76300, 76304.

38.     DOT addressed the airlines' assertion that there was no basis for concluding that persons with mobility disabilities are discouraged from traveling due to the prevalence of mishandled wheelchairs and scooters, explaining "that the public comments received from air

travelers with disabilities and disability rights organizations are representative of a widespread reluctance." *Id.* at 76304.

39. DOT further explained, "It is public policy that air travel should be accessible to all members of the public, and the Department believes that this rule advances that policy goal . . . and we continue to think that consumers with disabilities have the right to know which airlines provide the best service and have a right to select their air carriers based on that knowledge." *Id.*

40. In considering the compliance date for the Wheelchair Rule, DOT noted that "most carriers commented that they would need 12 to 24 months [following publication of the rule] to comply because of time necessary for reprogramming existing systems, installing new equipment, and training employees." *Id.* at 76304-05.

41. DOT also noted that Delta Air Lines and US Airways had commented that a compliance date of January 1 would be preferable "because it would provide the clearest demarcation between data sets." *Id.* at 76305.

42. DOT determined that the compliance date would be January 1, 2018—14 months after publication of the final rule—and stated that this date "provides air carriers with adequate time to update their internal systems and reporting processes." *Id.*

### DOT Issues a New Final Rule Delaying the Compliance Date

43. On November 29, 2016, then President-elect Donald J. Trump stated his intent to nominate Elaine Chao to for Secretary of Transportation. She was confirmed on January 31, 2017.

44. On January 20, 2017, then Assistant to the President and Chief of Staff, Reince Priebus, issued a memorandum to agency heads announcing a "Regulatory Freeze Pending

Review."[4] With respect to "regulations that have been published in the [Federal Register] but have not taken effect," Priebus asked agencies to postpone the effective date by 60 days "as permitted by law." Priebus further requested that "[w]here appropriate and as permitted by applicable law, [agency heads] should consider proposing for notice and comment a rule to delay the effective date for regulations beyond that 60-day period."

45. On January 24, 2017, the Acting Director for the Office of Management and Budget ("OMB"), Mark Sandy, issued a follow-up memorandum to agency heads regarding implementation of a regulatory freeze.[5] With respect to published rules that had not yet taken effect, Sandy stated that "[t]o the maximum extent possible, [agency] explanations for postponement should be individualized to the regulation being postponed."

46. Neither memorandum is applicable to the November 2, 2016, Wheelchair Rule issued by DOT because that rule had taken effect on December 2, 2016.

47. Between January 27, 2017, and March 2, 2017, DOT received two letters and an email from A4A and Delta Air Lines, requesting an extension of the compliance date for the Wheelchair Rule.

48. On January 27, A4A wrote to DOT that a delay in the compliance date was consistent "with the spirit" of Priebus's memorandum. A4A followed up by email on March 2, again invoking Priebus's memorandum and asserting that the airline "[i]ndustry is facing some

---

[4] Memorandum from Reince Priebus, Assistant to the President and Chief of Staff, for the Heads of Executive Departments and Agencies Regarding Regulatory Freeze Pending Review (Jan. 20, 2017), https://www.whitehouse.gov/the-press-office/2017/01/20/memorandum-heads-executive-departments-and-agencies.
[5] Memorandum from Mark Sandy, Acting Director, OMB, to Heads and Acting Heads of Executive Departments and Agencies, "Memorandum: Implementation of Regulatory Freeze" (Jan. 24, 2017), https://www.whitehouse.gov/the-press-office/2017/01/24/implementation-regulatory-freeze.

real challenges with both parts of this regulation and will need more time to implement it." A4A also stated that they would be back in touch with "more information in the near future."

49. On February 10, Delta Air Lines requested an extension in the compliance date as "consistent with" the Priebus memoranda.

50. On March 21, 2017, DOT published a final rule in the Federal Register delaying the compliance date by one year, to January 1, 2019. The Delay Rule took immediate effect. 82 Fed. Reg. at 14437.

51. DOT issued the Delay Rule without providing notice or the opportunity for public comment.

52. The only grounds stated by DOT for extending the compliance date are the Priebus memo and the requests from A4A and Delta Air Lines. *Id.*

53. This delay will have an adverse effect on veterans with mobility disabilities. As PVA's Executive Director recently explained:

> Paralyzed Veterans of America has grave concerns over the delays of this key component to providing disabled travelers with basic civil rights. . . . Our members are tired of incurring damage to their persons and wheelchairs when they travel by air, only to be caught in a web of inconvenient reporting and bureaucracy that results in little to no restitution. The information this new reporting will track plays an important role in protecting the health of our members and identifying additional training needed across the air travel industry.

*Paralyzed Veterans of America Expresses Grave Concerns for Disabled Air Travelers*, Paralyzed Veterans of America (Mar. 10, 2017), http://www.pva.org/about-us/paralyzed-veterans-of-america-looks-to-the-future-1.

54. Senator Tammy Duckworth has likewise expressed concern about the irreparable harm that individuals with disabilities will suffer as a result of this rule:

> In the past year, I have had my personal wheelchair mishandled and damaged several times. I have spent hours filling out paperwork and working with the

13

carrier to replace damaged parts. On a recent trip, I retrieved my wheelchair at the end of the jet bridge, but a titanium rod had been damaged during the flight and my chair literally broke apart while I was sitting in it. The airline was apologetic, but I was left without my primary wheelchair for over five days. I was lucky to have access to additional mobility devices during that time, but many consumers with disabilities do not.

Ltr. from Senator Tammy Duckworth to Secretary of Transportation Elaine Chao (April 17, 2017), *available at* https://www.duckworth.senate.gov/sites/default/files/DoT%20Disability%20Protections%20Rule.pdf.

## Claims for Relief

### Count One (Violation of APA - Failure to Comply with Mandatory Rule Making Procedure)

55. Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

56. DOT's promulgation of the Delay Rule extending the compliance date for airlines to collect and report data on mishandled wheelchairs and scooters constitutes rulemaking within the meaning of the APA, 5 U.S.C. § 551(5), and was therefore subject to the notice and comment requirements of 5 U.S.C. § 553.

57. DOT's promulgation of the Delay Rule without providing notice and an opportunity for public comment was without observance of procedure required by law, in violation of the APA, 5 U.S.C. § 706.

58. DOT's promulgation of the Delay Rule without publishing the rule 30 days prior to the effective date of the rule was without observance of procedure required by law, in violation of the APA, 5 U.S.C. § 706.

**Count Two (Violation of APA - Arbitrary and Capricious Action)**

59. Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

60. The grounds cited by DOT do not justify the Delay Rule.

61. In deciding to delay the effective date of the Wheelchair Rule, DOT therefore acted arbitrarily, capriciously, and otherwise contrary to law, in violation of the APA, 5 U.S.C. § 706.

WHEREFORE, plaintiffs pray that this Court:

1. declare that defendants violated the APA in issuing the Delay Rule and that it is therefore unlawful;

2. vacate the Delay Rule and reinstate the original Wheelchair Rule;

3. award plaintiffs their costs, attorneys' fees, and other disbursements for this action; and

4. grant any other relief this Court deems appropriate.

Dated: July 31, 2017

Respectfully submitted,

/s/ *Javier M. Guzman*
Javier M. Guzman
(D.C. Bar No. 462679)
Karianne M. Jones*
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
jguzman@democracyforward.org
kjones@democracyforward.org

*Attorneys for Plaintiffs*

*Admitted in the State of Minnesota; practicing under the supervision of firm principals.