# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PARALYZED VETERANS OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF TRANSPORTATION, et al., <br><br> Defendants. | Civil Action No. 17-1539 (JDB) |

## MEMORANDUM OPINION

In 2016, the Department of Transportation issued a final rule (the "Reporting Rule") that will require airlines to report the number of wheelchairs and scooters that are mishandled after being transported as checked luggage on passenger flights. Although the Reporting Rule was initially scheduled to take effect on January 1, 2018, the Department later issued another final rule (the "Extension Rule") that delayed the Reporting Rule's effective date by one year. Several months later, plaintiffs filed this action challenging the Extension Rule, arguing that it is arbitrary and capricious and that it should have been issued using notice-and-comment procedures.

Before the Court, the Department defends neither the substance of the Extension Rule nor the procedures that were used to promulgate it. Instead, the Department argues only that the Court lacks jurisdiction over plaintiffs' challenge, because a statute vests that jurisdiction exclusively in the federal courts of appeals. Indeed, the Department agrees that summary judgment should be entered for plaintiffs if there is jurisdiction here. But while plaintiffs' arguments against the Extension Rule may have merit, the Court's first consideration—and here, its only one—is jurisdiction. For the reasons that follow, the Court agrees with the Department that it lacks subject-matter jurisdiction over this case.

**I.     Background**

In 2011, the Department of Transportation (the "Department") proposed a new rule that would require airlines to report the number of wheelchairs and scooters that are delayed, damaged, or lost after being transported as checked luggage on domestic passenger flights. See Reporting Ancillary Airline Passenger Revenues, 76 Fed. Reg. 41,726 (July 15, 2011). In its notice of proposed rulemaking, the Department noted that "[m]any air travelers who use wheelchairs are reluctant to travel by air because of concern that the return of their wheelchairs or scooters will be delayed, or the wheelchair/scooter will be damaged or lost." Id. at 41,728. The proposed rule, the Department explained, would enable a traveler to select an airline based on its track record of handling mobility devices and would encourage airlines to handle such devices with greater care.

After receiving hundreds of comments from airlines, industry groups, disability-rights organizations, and other members of the public, the Department issued the final Reporting Rule in November 2016. The rule will require air carriers to "report monthly to the Department . . . [t]he total number of wheelchairs and scooters that were enplaned in the aircraft cargo compartment for any domestic nonstop scheduled passenger flight," as well as the number of such bags that were "mishandled." 14 C.F.R. § 234.6(b)(2)–(3); see also 14 C.F.R. § 234.2 (defining a "[m]ishandled checked bag" as one that was "lost, delayed, damaged or pilfered"). Though the Reporting Rule took effect on December 2, 2016, it initially applied only to flights taking place on or after January 1, 2018. See Reporting of Data for Mishandled Baggage and Wheelchairs and Scooters Transported in Aircraft Cargo Compartments, 81 Fed. Reg. 76,300, 76,306 (Nov. 2, 2016) [hereinafter "Reporting Rule"]. This deadline was in response to comments from airlines that it would take "12 to 24 months" to come into compliance with the rule because of the need to "reprogram[] existing systems, install[] new equipment, and train[] employees." Id. at 76,305.

2

A few months later, without following the notice-and-comment procedures provided for in the Administrative Procedure Act ("APA"), see 5 U.S.C. § 553, the Department issued another final rule that extended the Reporting Rule's compliance deadline to January 1, 2019. See Reporting of Data for Mishandled Baggage and Wheelchairs and Scooters; Extension of Compliance Date, 82 Fed. Reg. 14,437 (Mar. 21, 2017) [hereinafter "Extension Rule"] (codified at 14 C.F.R. part 234). The Extension Rule pointed to requests from Airlines for America ("A4A"), an industry group, and Delta Air Lines, Inc., both of which cited a January 20, 2017 memorandum circulated to executive agencies by then-White House Chief of Staff Reince Priebus, which instructed agencies to "temporarily postpone the effective dates of regulations that had been published in the Federal Register, but were not yet effective, until 60 days after the date of the memorandum." Id. at 14,437. A4A's request also stated that "industry is facing challenges with parts of this regulation and needs more time to implement it." Id.

In July 2017, over four months after the Extension Rule was issued, Paralyzed Veterans of America ("PVA"), a nonprofit organization, and Larry Dodson, a member of PVA, filed this lawsuit against the Department and the Secretary of Transportation in her official capacity (collectively, the "Department") seeking an injunction against the Extension Rule, so that the Reporting Rule would take effect on January 1, 2018 as originally scheduled. See Compl. [ECF No. 1] at 15. Dodson and PVA (collectively, "plaintiffs") have moved for a stay of the Extension Rule pending the resolution of this litigation, see Pls.' Mot. for a Stay Pursuant to 5 U.S.C. § 705 ("Pls.' Stay Mot.") [ECF No. 2], and for summary judgment, see Pls.' Mot. for Summ. J. [ECF No. 14]. They contend that the Extension Rule is procedurally invalid because it was promulgated without notice and comment, see Pls.' Combined Mem. in Supp. of Pls.' Mot. for Summ. J., Reply to the Mot. to Stay Pursuant to 5 U.S.C. § 705, and Opp'n to Defs.' Mot. to Dismiss for Lack of

3

Jurisdiction ("Pls.' Combined Mem.") [ECF Nos. 14-1, 16, 17] at 21–26, and substantively invalid because it is arbitrary and capricious, see id. at 26–28 (citing 5 U.S.C. § 706). The Department has elected not to address these arguments, see Reply in Support of Defs.' Mot. to Dismiss [ECF No. 18] at 1 n.1, and instead argues only that the Court lacks subject-matter jurisdiction over plaintiffs' suit. See Defs.' Mot. to Dismiss [ECF No. 10]; see also Defs.' Combined Mem. in Support of Defs.' Mot. to Dismiss and in Opp'n to Pls.' Mot. for Stay ("Defs.' Combined Mem.") [ECF Nos. 10-1, 11] at 1 n.1.

For the reasons given below, the Court agrees with the Department that it lacks jurisdiction. It will therefore transfer this case "in the interests of justice" to the U.S. Court of Appeals for the District of Columbia Circuit under 28 U.S.C. § 1631 and deny without prejudice the Department's motion to dismiss and the plaintiffs' motions for a stay and for summary judgment.[1]

**II.     Discussion**

Under 49 U.S.C. § 46110, the federal courts of appeals have exclusive subject-matter jurisdiction over any challenge to a rule issued by the Secretary of Transportation in whole or in part under part A of subtitle VII of title 49 of the U.S. Code ("Part A").[2] Such review must be sought in an appropriate court of appeals "not later than 60 days" after the challenged rule is issued. Id. § 46110(a). The Department contends that § 46110 strips this Court of jurisdiction over plaintiffs' challenge to the Extension Rule.

---

[1] "If a federal district court finds that it lacks subject matter jurisdiction, the court only has the authority to make a single decision: to dismiss the case, or in the interest of justice, to transfer it to another court pursuant to 28 U.S.C. § 1631." Nat'l Fed'n of the Blind v. U.S. Dep't of Transp., 78 F. Supp. 3d 407, 414–15 (citation and internal quotation marks omitted). At oral argument, the parties agreed that transfer would be the proper course of action should the Court determine that it lacked jurisdiction.

[2] See 49 U.S.C. § 46110(a) ("[A] person disclosing a substantial interest in an order issued by the Secretary of Transportation . . . in whole or in part under this part . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business."); see also id. § 46110(c) (making this grant of jurisdiction exclusive); Nat'l Fed'n of the Blind v. U.S. Dep't of Transp., 827 F.3d 51, 55 (D.C. Cir. 2016) (clarifying "that section 46110(a) includes review of [the Department's] rulemakings").

Initially, the Department's case seems straightforward. The Extension Rule restates the authority citation for 14 C.F.R. part 234,[3] which cites three statutory provisions: 49 U.S.C. §§ 329, 41101, and 41701. See Extension Rule, 82 Fed. Reg. at 14,437. The latter two provisions, §§ 41101 and 41701, both appear in Part A. Thus, the Extension Rule was issued "in part" under Part A, and jurisdiction to review the rule lies in the courts of appeals.

But as plaintiffs point out, neither § 41101 nor § 41701 even arguably supports the Extension Rule. Section 41101, entitled "Requirement for a certificate," requires that an air carrier obtain a certificate from the Department before providing air transportation services to the public. And § 41701, entitled "Classification of air carriers," authorizes the Department to establish "reasonable classifications for air carriers." See Pls.' Combined Mem. at 15. Any connection between these two provisions and the Extension Rule is tenuous at best.[4] Moreover, although § 329 at least colorably supports the Extension Rule, see, e.g., 49 U.S.C. § 329(a) (authorizing the Department to "collect and collate transportation information [it] decides will contribute to the improvement of the transportation system of the United States"), § 329 does not appear in Part A. Thus, plaintiffs argue, the Extension Rule was not "issued under" Part A.

The Department's responses are twofold. First, the Department points to a sentence in the Extension Rule which states that the rule was issued by the Department's Deputy General Counsel "under authority delegated in 49 CFR 1.27(n)." Extension Rule, 82 Fed. Reg. at 14,437. Section 1.27(n) provides: "The General Counsel is delegated authority to . . . conduct all departmental regulation of airline consumer protection . . . pursuant to chapters 401 . . . , 411 . . . ,

---

[3] See 1 C.F.R. § 21.43(a)(2)–(2)(i) ("If a [regulation] amends only certain sections within a CFR part [and] . . . [i]f the authority for issuing [the] amendment is the same as the authority listed for the whole CFR part, the agency shall simply restate the authority [citation for that part]." (emphasis added)).

[4] At one point in its briefing, the Department characterized the citation to §§ 41101 and 41701 as a "scrivener's error," Defs.' Combined Mem. at 11, although it later walked that position back, see Defs.' Reply at 5 n.5 (pointing out that section 41701 authorizes the Department to establish "reasonable requirements for each class" of air carriers but claiming "not [to] address this question here").

5

413 . . . , 417 . . . , and 423" of title 49—five chapters that all appear in Part A. Thus, the Department reasons, because the General Counsel issued the Extension Rule under the authority delegated in § 1.27(n), and because § 1.27(n) delegates authority to issue only Part A rules, the Extension Rule must have been issued under Part A. See Defs.' Combined Mem. at 9.

This argument fails for at least two reasons. First, it does not account for the possibility that the Extension Rule finds support in neither § 329 (because the General Counsel lacks authority to issue rules under that provision) nor §§ 41101 and 41701 (because neither of those provisions supports the Extension Rule as a substantive matter). See Pls.' Reply to Mot. for Summ. J. ("Pls.' Reply") [ECF No. 19] at 7–8. As plaintiffs correctly point out, see id., the fact that § 1.27(n) limits the General Counsel's authority to Part A statutes simply suggests that the Extension Rule was not properly issued under any of its cited authority; it does not provide a reason to ignore the cited authority and look instead to authorities that are not cited in the rule.[5]

The Department's argument also ignores 1 C.F.R. § 21.43, which provides that if an agency amends a part of the Code of Federal Regulations, and if "the authority for issuing [the] amendment is the same as the authority for the whole C.F.R. part," then the amending document "shall simply restate" the authority citation for that part. Here, the Extension Rule "simply restat[ed]" the authority citation for 14 C.F.R. part 234. See Extension Rule, 82 Fed. Reg. at 14,438 ("The authority citation for part 234 continues to read as follows . . . ."). This suggests that the statutes cited in the authority citation were "the authority for issuing the amendment." It also suggests that the citation to § 1.27(n) was meant only to identify the delegated authority that

---

[5] Though plaintiffs offer this conclusion as a reason to avoid § 46110, they do not assert it as a ground upon which to invalidate the Extension Rule. This may be because the Extension Rule simply restates the authority citation for 14 C.F.R. part 234, which is the same authority on which the Reporting Rule relies. Compare Extension Rule, 82 Fed. Reg. at 14,438 with Reporting Rule, 82 Fed. Reg. at 76,303. Were the Court to invalidate the Extension Rule on this basis, then under the same logic, the Reporting Rule would also be invalid—a result that neither party advocates.

allowed the General Counsel to issue the Extension Rule on the Secretary's behalf. Thus, plaintiffs are correct that the Extension Rule's citation to § 1.27(n) does not identify the authority under which the rule was "issued" for purposes of § 46110.

Next, the Department argues that even if part 234's authority citation sets out the Extension Rule's statutory authority, § 46110 still applies because two of the statutes listed in the authority citation (§§ 41101 and 41701) appear in Part A. See Defs.' Reply at 4–8. This is so, the Department claims, even assuming that neither statute actually supports the Extension Rule, because "whether an agency action was duly authorized is a merits question of law to be decided by the court to which Congress conferred jurisdiction"—here, the courts of appeals. Id. at 7. But this argument also misses the mark. Plaintiffs do not ask the Court to determine whether the Extension Rule is valid under §§ 41101 and 41701, as the Department asserts, see id. at 5–8; rather, they urge the Court to determine whether those provisions even colorably support the rule. See Pls.' Reply at 7. And as plaintiffs correctly point out, courts often "peek at the merits" of a case to determine their jurisdiction. Pls.' Reply at 6 (quoting Prof'l Cabin Crew Ass'n v. Nat'l Mediation Bd., 872 F.2d 456, 459 (D.C. Cir. 1989) (federal courts lack subject-matter jurisdiction to review decisions of the National Mediation Board, an independent agency that mediates airline and railway labor disputes, unless there is a "showing on the face of the pleadings that the . . . decision was a gross violation" of the Railway Labor Act or the Constitution (citation omitted))); see Bell v. Hood, 327 U.S. 678, 682 (1946) (a claim may be dismissed for lack of federal-question jurisdiction where "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction").

However, as a review of the relevant cases demonstrates, such a "peek" is not warranted here. Two cases—one cited by the parties, and one not—are particularly instructive. The first is

American Petroleum Institute v. SEC, in which a coalition of industry groups challenged a final rule promulgated by the Securities and Exchange Commission pursuant to a provision of the Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd–Frank"). 714 F.3d 1329, 1331 (D.C. Cir. 2013). That provision, codified at section 13(q) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78m(q), directed the Commission to require certain companies to report payments made to foreign governments in connection with the extraction of oil, natural gas, and mineral resources from their territories. Id. In addition to section 13, the final rule (the "Resource Extraction Rule") cited sections 3(b), 12, 15, 23(a), and 36 of the Exchange Act as its statutory authority. See Disclosure of Payments by Resource Extraction Issuers, 77 Fed. Reg. 56,365, 56,417 (Sept. 12, 2012). The industry groups filed suit in both district court and the D.C. Circuit "out of an abundance of caution," Am. Petrol. Inst., 714 F.3d at 1332, and Oxfam America, an advocacy group, intervened in the D.C. Circuit proceedings. Oxfam argued that the court of appeals lacked jurisdiction because the applicable direct-review provision, section 25(b) of the Exchange Act, 15 U.S.C. § 78y(b), did not cover the Resource Extraction Rule's cited authorities. Id. at 1333–34.

The D.C. Circuit agreed and dismissed the industry groups' petition for review. True, the court noted, the Resource Extraction Rule cited section 15 of the Exchange Act as one source of statutory authority, and section 25(b) provided for direct review of rules issued under sections 15(c)(5) and (6). Id. at 1333. But the SEC had indicated in its brief that the part of section 15 that supported the rule was section 15(d). Id. This explanation "made perfect sense," moreover, because section 15(d) authorized the SEC to collect "[s]upplementary and periodic information" from issuers of securities, 15 U.S.C. § 78o(d), whereas subsections 15(c)(5) and (6) merely authorized certain regulations of brokers and dealers, see id. § 78o(c)(5)–(6). Thus, the court of

8

appeals concluded that the Resource Extraction Rule's citation to section 15 was insufficient to trigger direct review under section 25(b). Am. Petrol. Inst., 714 F.3d at 1333.

American Petroleum provides some support for plaintiffs' position, but it is not quite on all fours with this case. There, the question was what to do when a rule cites a larger statutory unit but only certain parts of that unit trigger direct review. Here, the situation is reversed: the Extension Rule cites two provisions (§§ 41101 and 41701) that both appear in a larger statutory unit (Part A), the whole of which triggers direct review. Because applying § 46110 does not require the Court to first identify which subparts of the Extension Rule's cited authorities really support the rule, the need to "peek" at the merits of plaintiffs' challenge here is less pressing.

Loan Syndications and Trading Ass'n v. SEC, 818 F.3d 716 (D.C. Cir. 2016), a case cited by neither party, is more closely on point. There, an industry group challenged a rule issued pursuant to a different provision of Dodd–Frank, codified at section 15G of the Exchange Act, 15 U.S.C. § 78o–11, which directed the SEC, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the Office of the Comptroller of the Currency to jointly promulgate a rule (the "Risk Retention Rule") requiring issuers of asset-backed securities to retain at least a five-percent share of the risk underlying any such securities. Loan Syndications & Trading Ass'n, 818 F.3d at 718. As in American Petroleum, section 15G did not appear in the Exchange Act's direct-review provision, section 25(b). Nonetheless, the industry group filed a petition for review of the Risk Retention Rule in the D.C. Circuit, arguing that other statutes cited in the various versions of the rule that appeared in the Federal Register (each of the four promulgating agencies had published its own version) triggered direct review. Id. at 721.

The D.C. Circuit rejected this argument. Although the four agencies had cited various statutory authorities in addition to section 15G (including parts of the Securities Act of 1933 and

9

the Bank Holding Company Act of 1956), and although some of these authorities did trigger direct review under other statutes, see id. at 721–22, the court of appeals nonetheless emphasized that the Risk Retention Rule was "a joint rule—a rule that neither party suggests the agencies had authority to promulgate on their own." Id. at 723. Because the industry group conceded that no statute besides section 15G—that is, neither the statutes cited in the rule's various Federal Register entries nor any other statute—even "colorably authorized the joint rule," id., the court held that it lacked subject-matter jurisdiction and transferred the case to district court, see id. at 724.[6]

Again, Loan Syndications provides some support for plaintiffs' position. Like Loan Syndications, this case involves a citation to multiple statutory authorities, two of which (§§ 41101 and 41701) trigger direct review but do not colorably support the Extension Rule, and the third of which (§ 329) colorably supports the Extension Rule but does not trigger direct review.[7] At first glance, therefore, Loan Syndications suggests that this Court should disregard the citations to §§ 41101 and 41701, look only to § 329, and conclude that it has jurisdiction.

But this case is also different from Loan Syndications in an important respect. Central to the D.C. Circuit's reasoning in that case was its conclusion that no statute other than section 15G even colorably authorized the joint rulemaking effort that produced the Risk Retention Rule. Here, the situation is exactly the opposite: all parties agree that the Department easily could have issued the Extension Rule under other Part A authorities and that, had it done so, jurisdiction would lie in

---

[6] The court also distinguished two prior cases in which the D.C. Circuit had held that it had direct-review jurisdiction. See id. at 722–23 (discussing International Brotherhood of Teamsters v. Pena, 17 F.3d 1478 (D.C. Cir. 1994), and Media Access Project v. FCC, 883 F.2d 1063 (D.C. Cir. 1989)). In those cases, the challenged rules cited both a specific statutory authority (which did not trigger direct review) and the promulgating agency's more general organic statute (which did). Direct review was proper in those cases, the Loan Syndications court explained, because "the agencies could colorably rely on broad grants of organic statutory authority." Id. at 723. But this was not so in Loan Syndications, where no statute besides section 15G colorably authorized the Risk Retention Rule.

[7] Plaintiffs claim that the Department has conceded that §§ 41101 and 41701 do not support the Extension Rule, although the Department does not agree. See Pls.' Reply at 2 & n.2. Though the Court ultimately need not (and therefore does not) resolve this dispute, the Court notes that if the Department had made such a concession, then this would be another parallel between this case and Loan Syndications.

10

the courts of appeals. In fact, the Department suggests (and plaintiffs do not really dispute) that the Extension Rule cited §§ 41101 and 41701 by mistake. Thus, the concern driving the D.C. Circuit in Loan Syndications is not present here: the Extension Rule could have been—and indeed, likely should have been—issued under statutory authority that would have triggered direct review.

There is ample evidence in the record to support this conclusion. Before the Department promulgated the Reporting Rule in 2016, the authority citation for part 234 cited 49 U.S.C. §§ 329 (entitled "Transportation information"), 41708 ("Reports"), and 41709 ("Records of air carriers"). Sections 41708 and 41709 both appear in Part A. Moreover, unlike §§ 41101 and 41701, both would likely support the Reporting Rule (and hence the Extension Rule). See 49 U.S.C. § 41708(b)(1)(A) (authorizing the Department to "require an air carrier . . . to file annual, monthly, periodical, and special reports with the Secretary in the form and way prescribed by the Secretary"); id. § 41709(a) (providing that the Secretary "shall prescribe the form of records to be kept by an air carrier . . . and the time period during which the records shall be kept").

The Department's 2011 notice of proposed rulemaking for the Reporting Rule proposed without explanation to amend part 234's authority citation by replacing §§ 41708 and 41709 with "49 U.S.C. . . . chapters 41101 and 41701." Reporting Ancillary Airline Passenger Revenues, 76 Fed. Reg. 41,726, 41,730 (July 15, 2011). Apparently recognizing that there are no "chapters 41101 and 41701" in title 49, the drafters of the final Reporting Rule changed the citation again, this time to its present form: "49 U.S.C. 329, 41101 and 41701." Reporting Rule, 82 Fed. Reg. at 76,306. And the Extension Rule, issued few months later, simply restated this citation. See Extension Rule, 82 Fed. Reg. at 14,437.

At oral argument, the Department suggested that the notice of proposed rulemaking had actually meant to expand part 234's authority citation—that is, to cite chapters 411 and 417 of title

11

49. This mistake was then compounded by the drafters of the final Reporting Rule, who "corrected" the citation not by changing the phrase "41101 and 41701" to "411 and 417," but rather by changing the word "chapters" to "sections." In light of the foregoing review of the Reporting Rule's drafting history, this explanation for the change—the only one offered by either party—"makes perfect sense." Am. Petroleum Inst., 714 F.3d at 1333. Why else would the Department have changed the citation from clearly applicable statutory authority (§§ 41708 and 41709) to clearly inapposite authority (§§ 41101 and 41701)?

Indeed, plaintiffs do not seriously dispute that the Extension Rule's citation to §§ 41101 and 41701 was a mistake. Instead, they argue that they should nonetheless be allowed to proceed for two reasons. First, they argue that the Department should suffer the consequences of its own error. See Pls.' Combined Mem. at 20. Plaintiffs frame the issue as one of notice, arguing that "[n]othing in the [Extension] Rule put [plaintiffs] on notice that it was validly promulgated under [P]art A . . . and, accordingly, that a jurisdictional provision directed [that] any challenge might need to be brought in the court of appeals within 60 days." See id. But this is not so. The Extension Rule clearly cited two Part A provisions, and plaintiffs have cited no authority that would have suggested in March 2017, when the Extension Rule was promulgated, that they could safely ignore those provisions for purposes of § 46110. Plaintiffs may have believed at the time that the citation to §§ 41101 and 41701 did not validly trigger § 46110, but they cannot say that they lacked notice that § 46110 might apply.

Second, plaintiffs argue that if district courts lack the power to disregard citations to authorities that do not even colorably support a rule, then an agency could "manufacture" jurisdiction simply by citing inapposite authorities that trigger the agency's preferred jurisdictional

12

route. Id. at 16. This argument has some force.[8] In a case where an agency appears to have attempted to manufacture jurisdiction using citations to inapposite statutory authority, plaintiffs' proposed approach—taking a "peek" at the rule's cited authorities and disregarding any plainly inapposite ones—might be warranted. In this case, however, the record suggests that the Extension Rule's citation to §§ 41101 and 41701 was not an intentional act of forum shopping, and plaintiffs do not contend otherwise. The parties do not dispute that had the Department wanted to ensure that § 46110 would apply to the Reporting Rule, it could have included a citation to one of the many on-point authorities that appear in Part A. Indeed, it could have simply left the authority citation for part 234—which previously cited §§ 41708 and 41709—unchanged.

The Court concludes that where, as here, the record suggests that a rule mistakenly cites an inapposite statutory authority instead of some other, clearly applicable authority, and where there is no evidence (or even allegation) of bad-faith conduct on the part of the promulgating agency, the Court may treat the rule as issued "under" the mistakenly omitted authority for purposes of ascertaining its jurisdiction under a direct-review statute. This conclusion is in accord with the pragmatic approach taken by the D.C. Circuit in American Petroleum and Loan Syndications, where the court rejected a mechanical analysis of the challenged rules' authority citations and looked instead to the statutory authorities that actually supported the rules. It also comports with the D.C. Circuit's frequently articulated presumption in favor of direct review. See, e.g., Loan Syndications & Trading Ass'n, 818 F.3d at 719–20 (explaining that the D.C. Circuit "interpret[s] ambiguities in direct-review statutes in favor of appellate jurisdiction, absent a firm indication that

---

[8] The Department responds that agencies are unlikely to attempt such gamesmanship, because a citation to an inapposite statutory provision would jeopardize a regulation's validity in merits proceedings (whether in a district court or a court of appeals). See Defs.' Reply at 8 n.7. But as plaintiffs correctly point out, and as this case itself shows, an agency could cite both a rule's actual statutory authority and the authority that triggers the preferred jurisdictional provision. See Pls.' Reply at 4 n.5. The latter citation would confer jurisdiction (since § 46110 applies to statutes issued "in whole or in part" under Part A), and the former citation would save the rule on merits review.

13

Congress intended to locate APA review of agency action in the district courts" (alterations and internal quotation marks omitted)).⁹ Finally, it avoids the untenable result of a district court exercising jurisdiction over a challenge to a rule that all parties agree could have been—and which the record suggests should have been—promulgated under statutory authority that would trigger direct review in the court of appeals.

### III. Conclusion

Because the Extension Rule mistakenly cites 49 U.S.C. §§ 41101 and 41701 instead of chapters 411 and 417 (or alternatively, instead of §§ 41708 and 41709), and because the record suggests that the citation was not intended to invoke a jurisdictional provision that would not otherwise apply, the Extension Rule was "issued . . . under" Part A authority within the meaning of § 46110. The Court therefore lacks jurisdiction over this action, and it will transfer the case "in the interests of justice" to the U.S. Court of Appeals for the District of Columbia Circuit under 28 U.S.C. § 1631. The Court will therefore deny without prejudice [2] plaintiffs' motion for a stay, [10] the Department's motion to dismiss for lack of subject-matter jurisdiction, and [14] plaintiffs' motion for summary judgment. A separate order has been entered on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: December 21, 2017

---

⁹ See also Nat'l Auto. Dealers Ass'n v. FTC, 670 F.3d 268, 270 (D.C. Cir. 2012); Gen. Elec. Uranium Mgmt. Corp. v. Dep't of Energy, 764 F.2d 896, 903 (D.C. Cir. 1985). The D.C. Circuit has explained the reason for this presumption as follows: "Placing initial review of agency actions in the courts of appeals often makes good sense. Agencies typically compile records, rendering the district court's factfinding capacity unnecessary. And because appeals are all but guaranteed, requiring district court review may only add delay and expense." Loan Syndications & Trading Ass'n, 818 F.3d at 719 (alterations, citations, and internal quotation marks omitted).